## Case No. 17,130.

### In re WALTON et al.

[Deady, 598;[1] 4 N. B. R. 466 (Quarto, 154); 2 Am. Law T. 121; 1 Am. Law T. Rep. Bankr. 162.]

District Court, D. Oregon. July 12, 1869.[2]

BANKRUPTCY—PROVABLE DEBTS—UNLAWFUL PREFERENCES—INTENT.

1. Where a creditor takes a preference from an insolvent debtor, with reason to believe that such debtor was then insolvent, and intended to evade the provisions of the bankrupt act [of 1867 (14 Stat. 517)] by preventing his property from being distributed thereunder among his creditors, such creditor is barred from proving his debt, and may be compelled to restore property so taken, to the assignee.

[Cited in Re Scott, Case No. 12,518; Re Leland, Id. 8,230.]

2. The bankrupt act does not trust the legal rights of one portion of the creditors of an insolvent to the judgment or good intentions of another portion, and therefore it makes no difference with what ultimate intention a creditor takes a preference contrary to the act, he thereby forfeits his right to prove his debt.

[Cited in Re Scott, Case No. 12,518.]

[In bankruptcy. For prior proceedings, see Cases Nos. 17,128 and 17,129.]

Objections by the assignee, Joseph Bachman, to the proof of debts by Allen & Lewis and Henry Failing. The objections being similar and depending upon the same facts they were heard together.

Mr. Register HILL, to whom the matter was referred, found the following conclusions of fact and law:

[1] [Reported by Hon. Matthew P. Deady, District Judge, and here reprinted by permission.]
[2] [Affirmed by the circuit court. Case unreported.]

Son were largely indebted to divers other persons, most of them residing at Portland, Oregon, for goods sold them. 3. That at that time said J. J. Walton & Son were insolvent. 4. That on said 27 day of June, these creditors, Allen & Lewis and Failing, by their agent and attorney, E. D. Shattuck, at Eugene City, Oregon (the place of business of said Walton & Son), procured the said firm of J. J. Walton & Son to confess judgments in their favor for the amounts due them respectively, in the circuit court of the state of Oregon for the county of Lane. 5. That on the 29 day of June, 1869, those creditors Allen & Lewis and Failing, caused executions to be issued upon the judgments so confessed, and directed the sheriff to seize the property of said J. J. Walton & Son upon those executions, and to act under the directions of J. B. Underwood as to further proceedings, and at the same time sent instructions by mail from Portland to Underwood at Eugene City, to the effect that it was not their intention to get any preference in the final distribution of the moneys to be made by the sale of the property, but that it was their intention to avoid the expense of a division of the moneys under the bankrupt law; and further instructing him to have the sheriff turn over the property to any agent whom the creditors might agree upon to sell the same and distribute the money, or to the marshal in case proceedings should be instituted under the bankrupt law, and the marshal as messenger should be directed by the court of bankruptcy to seize the property. 6. That at the time of taking of said judgment by confession, and at the time of causing said executions to be issued, and at the time the property was seized upon said executions, these creditors, Allen & Lewis and Failing, knew that J. J. Walton & Son were insolvent; that is, could not pay all their debts in full, and their debts could not be paid in full upon sale of all their property under execution. 7. That on the 2d day of July, 1868, proceedings were instituted by order of the creditors of said Walton & Son, to have them adjudged bankrupts, and that on the 28th day of July, 1868, they were adjudged bankrupts by this court upon the proceedings so instituted. 8. That these creditors, Allen & Lewis and Failing, made no resistance to the marshal seizing the property levied upon under their said execution; and that with their offer to prove their debts they also offer to surrender any advantage or preference which they may have obtained by their said proceedings against said J. J. Walton & Son. And, upon these findings of fact, I find as a conclusion of law, that these creditors, Allen & Lewis and Failing, should not be allowed to prove their debts, but that their claims should be rejected, and they be adjudged to pay the costs of this proceeding.

In support of his conclusions, the register filed the following opinion, which, being adopted by the court, is here inserted:

On the 27th day of June, 1868, Walton & Son, merchants, doing business in copartnership at Eugene City, Oregon, being indebted to Allen & Lewis, merchants of Portland, in the sum of $3,982.33, and to Henry Failing, merchant of Portland, in the sum of $2,002.64, confessed judgments in favor of these creditors respectively, for the amounts of their respective demands. At that time Walton & Son were largely indebted to others, amounting in all to over $10,000, and were insolvent. These judgments were confessed after some pressure from the creditors, Allen & Lewis and Failing. That Walton & Son were at that time insolvent is not questioned; and I cannot but conclude that these creditors knew of such insolvency. They offer to prove their claims against the estate; and the depositions they offer for such proof go beyond the forms prescribed by the supreme court, and contain a large amount of matter in regard to taking the judgments, which I suppose is intended to exculpate these creditors from any charge of violating the bankrupt law in taking the confessions of judgments; and among other things, these creditors say in their depositions for proof of debt, that they supposed, when they took the confessions, that if the property of Walton & Son (which consisted of a small stock of goods for retail business) could be disposed of at its full value and if the debts due Walton & Son could all be collected, Walton & Son would be able to pay their debts in full. To the same effect is the testimony of Mr. Failing and Mr. Lewis, when on the stand as witnesses. Neither of them pretends to have supposed that Walton & Son were, or would be, able to pay in full, except upon all the contingencies stated above. They were unable to pay on demand, and their property was insufficient to pay in full upon forced sale. This these creditors knew; and this is insolvency. In re Randall [Case No. 11,551] decided by the judge of this court; Hastings v. Knox, 1 Am. Law Times, 73; In re Black [Case No. 1,457].

But these creditors endeavor to rebut the presumption of fraud which the law attaches to this transaction, by stating their own intentions at the time—that they intended only to preserve the assets of Walton & Son from being wasted through the dissipation of young Walton, and would have made a distribution of the proceeds of the property pro rata among all the creditors. I think this evidence incompetent. It would be an alarming proposition to lay down as a rule for the guidance of courts of justice, that a man may, in express violation of the statute, seize and appropriate wholly to himself that of which the larger portion belongs to others, and then, when overtaken by the law, escape its penalties by saying he never intended any fraud; he did not intend to use the advantage which he had thus gained, to another's injury. Some persons might—as I suppose these creditors may have intended to do—make a just and equitable division of what they had obtained; but these would be the exceptions, and the rule would be that the rapacious and unconscientious creditors of every insolvent debtor would seize

all his assets regardless of the rights of other creditors; and then, if prevented by the law from depriving the other creditors of any part of the estate, would pass out at this convenient and wide door of escape, carrying with them all the rights of innocent men, notwithstanding the penalties denounced against their acts by the statute. The law does not leave the rights of one man to the generosity of another.

These creditors further seek to show that they had conversations with other creditors almost immediately after taking the confessed judgments, and before issuing execution, in which their entire good faith, and their intention to make a just distribution, were expressed to such other creditors. This evidence is objected to on the part of the assignee. It is not pretended on the part of A. & L. and F. that there was any agreement between all the creditors, that the estate of Walton & Son should be wound up in the way suggested; and unless these conversations amounted to a mutual agreement of that kind, by which all parties interested in the estate might be estopped to object to it afterwards, I cannot see how the conversations affect the case. They are therefore excluded.

The creditors, A. & L. and F., on the 29th day of June, two days after the judgments were confessed, caused executions to be issued thereon, and the property of Walton & Son to be seized. On the same day they sent written instructions to J. B. Underwood, an attorney, at Eugene City, by mail from Portland, directing him to have the sheriff hold the property under the executions, subject to an arrangement they wished to make to have it disposed of for the benefit of all the creditors, and to have the property turned over to such agent as the creditors might agree upon, to avoid the expense of having it distributed under the bankrupt law; and, further, to have it delivered up to the messenger, if proceedings were instituted in the court of bankruptcy. This was after these creditors were informed that the other Portland creditors had sent an agent and attorney to Eugene City to see about their claims against Walton & Son. Indeed, the prime object in taking these confessions of judgment and all the proceedings under them, seems, upon the construction most favorable to these creditors, to have been to avoid a distribution of the assets of Walton & Son under the bankrupt law. This appears from the testimony of Mr. Shattuck, the agent and the attorney who procured the judgments, as well as from the instructions to Underwood. Such a transaction, "assignment, transfer, conveyance," etc., "or warrant to confess judgment," made to defeat or hinder the operation of the bankrupt law, and within six months before the filing of a petition by a creditor for adjudication of bankruptcy against the debtor, is a fraud upon the law, and an act of bankruptcy (section 39); and if made to a person who knows or has reasonable cause to believe the debtor is insolvent, or

that a fraud upon the act is intended, it brings upon such person the penalties and disabilities of a participant in the fraud (section 39); namely, the liability to an action for the property so transferred, assigned or conveyed, or its value, and the exclusion from any participation in the dividends that may be declared to the creditors of the estate. The direction to Underwood to have the sheriff deliver the property of Walton & Son to the messenger, in case proceedings in bankruptcy should be instituted, was only a direction to do without resistance that which he could have been compelled to do if he had refused; and can have no influence in the case, unless it be to disclose the reason for the preceding instructions; the desire to escape the imputation of fraud which the law puts upon their acts. Walton & Son were adjudged bankrupts on the 28th day of July, 1868, upon the petition of one of their creditors, these judgments and executions being the acts upon which the adjudication was founded. These creditors, A. & L. and F., propose now to prove the debts upon which the judgments were taken, and offer to surrender any advantage they may have acquired by the judgments or executions, and take their distributive shares in the estate, as if such preference had never been taken. This presents the question: Can a creditor who, within six months before a petition for adjudication of bankruptcy is filed by another creditor, has taken a preference knowing the debtor to be insolvent, surrender his preference and take his place with other creditors, and receive the dividends as if such preference had not been taken?

The bankrupt act (section 39), as it stood at the time of these transactions, provides that any insolvent person who shall give any fraudulent preference by "transfer or conveyance of any money, property or other thing, or shall give any warrant to confess judgment, or procure or suffer his property to be taken on legal process, shall, upon the petition of one or more of his creditors, whose provable claims amount in the aggregate to $250 or more, be adjudged a bankrupt, providing such petition be brought within six months after the act of bankruptcy is committed; and if such person shall be adjudged a bankrupt the assignee may recover back the money or property so paid, assigned," etc.; "provided, the person receiving such payment or conveyance had reasonable cause to believe that a fraud on this act was intended, or that the debtor was insolvent, and such creditor shall not be allowed to prove his debt in bankruptcy." Who is meant by "such creditor" in the last clause above quoted? The plain and obvious meaning, construing this section alone, is the creditor receiving such preference: "such creditor" is "the person receiving such payment, conveyance," etc. But it is claimed that section 23 allows a creditor who has taken a preference in fraud of the act—constructive fraud—to prove his debt upon surrender-

ing all advantages of the preference; and that these two sections must be construed together. And it is said that this construction is the only one which can reconcile the provisions of section 23 with those of 39, above cited. But I do not think that is correct. To construe them thus would not reconcile them, but would wholly annul the last clause in section 39. A construction which renders any part of a statute inoperative should not be adopted if any other can reasonably be given. McCartee v. Orphan Asylum, 9 Cow. 437. In this case the statute may be so construed as to avoid the apparent conflict between sections 23 and 39, and give effect to each; a construction, indeed, which gives the language used in the two sections its natural and ordinary import. Section 23 provides that any person receiving a preference "after the passage of this act," having knowledge or reasonable cause to believe that the debtor is insolvent, shall not share in dividends without surrendering his preference to the assignee for the benefit of all the creditors. Section 39 is the first section making provision for involuntary bankruptcy—adjudication upon creditor's petition—and denies the right to share dividends or prove claims to any creditor who has taken such preference "within six months" next preceding the commencement of the proceedings in bankruptcy by a creditor. I think section 39 operates as a limitation of the provision in section 23, and limits its application to cases where the preference is received in fraud of the act, more than six months prior to the filing of a petition for adjudication of bankruptcy by a creditor. If the preference is received more than six months before the petition is filed, or the adjudication of bankruptcy is made upon the debtor's own petition, the creditor may surrender his preference and prove his debt, notwithstanding the preference was constructively fraudulent; but if the preference was taken within six months, and the adjudication is upon the petition of one or more creditors, the preferred creditor cannot prove his debt nor share in dividends. This construction should not be rejected merely because it may in some cases—as I believe it may in the present case—work a hardship upon creditors who intend only to use such diligence as will secure their own and other creditors' distributive shares in the estate. Considerations of this character ought not to induce a court to put a subtle and forced construction upon statutes, contrary to their plain and obvious import. Waller v. Harris, 20 Wend. 555; McCluskey v. Cromwell, 11 N. Y. 593.

The conclusion, therefore, at which I have arrived, is that these creditors, A. & L. and F., can not be allowed to prove their debts against the estate of the bankrupts. This conclusion rests not alone upon what seems to me to be the true construction of the bankrupt law; the same construction was placed upon these two sections by the district court for the Wisconsin district in Re Princeton [Case

No. 11,433], in which the court, after a somewhat extended examination of the question and of the reasons for this provision in regard to involuntary bankruptcy, says: "It can not be permitted to a creditor who, with reasonable knowledge, has participated in such fraud on the act as to found a proceeding against his debtor, to relinquish his intended preference and claim to prove his debt under the 23d or any other section of the bankrupt act."

Another objection to the proof of these claims, urged by the counsel for the assignee, is that the confessed judgments, being void by section 35 of the bankrupt act, can not be the basis of claims against the estate; and that, though void as to the bankrupt act, these judgments were valid under the state laws, and therefore the original debts, being merged in the judgments, can not be the basis of claims against the estate. If this were the only objection, I should have to admit the claims to proof. This reasoning seems to me to be artificial and unsound. It is a maxim of the law that "a void act is no act;" and if these judgments are void as to the bankrupt law, they have no effect to merge the claims upon which they are founded, as to the bankrupt law. But I think these judgments, if void under section 35, are void for all purposes. The language is that such preferences are "void"—not "void as to the bankrupt act." There are the strongest reasons why this provision should have been made, and why the broadest language possible should have been used in the law. The only way in which the law can be made to operate equally upon all creditors whose debts were originally—in their nature—provable in bankruptcy; the only way to make the system a "uniform system of bankruptcy," was to make these preferences void to all intents and purposes. And such was the decision under the bankrupt law of 1841 [5 Stat. 440], upon language identical with the wording of the 35th section of the law of 1867. McLean v. Lafayette Bank [Case No. 8,885]. There are some other questions raised in the written arguments submitted to me, but I deem it unnecessary to consider them at this time.

M. W. Fechheimer, for assignee.
Erasmus D. Shattuck, for creditors.

DEADY, District Judge. I concur in the conclusions of fact and law as found by the register and in his opinion in support thereof. When the question was first raised as to the right of Allen & Lewis and Henry Failing to prove their debts, I inclined to the opinion that a creditor who had taken a preference contrary to the act, might in any case be allowed to prove his debt upon the surrender of the property, benefit or advantage obtained by him under such preference, as provided in section 23. But after long and careful deliberation, I am forced to come to a different conclusion. I am now satisfied that to allow these creditors to surrender their unlawful

preference, and come in and prove their debts under section 23 would be to violate both the letter and spirit of the act. It may be admitted that section 23 is of general application, in both voluntary and involuntary cases, except as otherwise provided in section 39. But the special provision in the latter section, declaring that a creditor shall not be allowed to prove his debt in a particular case, so far, excludes the operation of the general words of the former. Now this special provision of section 39 covers this case at every point, and therefore takes it out of section 23.

Walton and Son, being insolvent, confessed a judgment, and procured and suffered their property to be taken on legal process, with intent to give a preference to A. & L. and H. F. This being the case, the section declares, that if the person receiving such preference "had reasonable cause to believe that a fraud on the act was intended or that the debtor was insolvent," that the assignee may recover back the money or property paid or transferred contrary to the act, and that "such creditor"—that is, the creditor receiving such preference, with reasonable cause to believe, etc.—"shall not be allowed to prove his debt in bankruptcy." These creditors, by their agent, had not only reason to believe, but knew, that at the time of giving this preference, Walton and Son were insolvent, and that in so doing they intended a fraud upon the act—that is, intended to evade its provisions by preventing their property from being distributed among their general creditors under it. To these acts or conduct, section 39 attaches certain consequences: First—The preferred creditors may be compelled by the assignee to restore the money or property received under the preference. Second—Such creditors are prohibited from proving their debts in bankruptcy. The first of these provisions is remedial, and furnishes the means whereby the wrong committed in giving and receiving a preference may be corrected. But the second is preventive, and intended to deter creditors from receiving preferences for fear of losing or forfeiting their debts thereby. Of the two it is the more important and more likely to prevent violations or evasions of the act in this respect. The liability to these consequences or penalties arises upon the same facts—the creditors taking a preference contrary to the act—but the right to enforce the one does not depend upon the enforcement of the other. They are distinct and cumulative. The assignee may recover back the money or property without objecting to the proof of debt, or the proof of debt may be excluded where there has been no such recovery.

What use these creditors may have ultimately intended to make of their preference is immaterial. Let it be admitted that they intended so far as they know, to share the proceeds of their executions with their fellow creditors, pro rata. The law does not trust the legal rights of one portion of the creditors to the judgment or good intentions of the others. While, as a matter of fact, it may have been safe to do so in this case, in a majority of others it might or would not. Besides a mere intention or even proposition on their part to admit the rest of the creditors to a share of the property was not a contract with such creditors which the latter could enforce. Such intention or proposition could have been changed or withdrawn by A. and L. and H. F. at any time before it was realized or accepted, with impunity. In legal effect, the transaction as claimed by these creditors, was nothing more or less than obtaining a preference contrary to the act, with intention to make such arrangement with the general creditors as the parties taking the preference might think proper under the circumstances. This would be to make themselves judges in their own case. An order will be made rejecting these claims, and directing the register to refuse to allow them to be proved, and that A. and L. and H. F. be adjudged to pay the costs and expenses of this proceeding.

[This cause was subsequently affirmed by the circuit court. Case unreported.]